STATE OF NORTH CAROLINA v. THOMAS LATTIE McLAMB AND SHIRLEY LANG McLAMB

No. 8411SC11

(Filed 16 October 1984)

1. **Criminal Law § 85.2— character witness—cross-examination about prior pleas by defendants**

   In a prosecution for possession of marijuana with intent to sell, defendants were not prejudiced when the trial court permitted the prosecution to cross-examine defendants' character witness as to knowledge of defendants' guilty pleas in prior marijuana cases since defense counsel introduced the subject of defendants' reputation for illegal activity, the character witness admitted on direct examination that he had heard "little things" about defendants, and the prosecution thus could inquire into the witness's assertion that he was not aware of any illegal activity by defendants and into the apparent contradiction in his testimony about defendants' general reputation in the community.

2. **Searches and Seizures § 44— motion to suppress evidence—court's order not inconsistent**

   The court's order in a suppression hearing was not inconsistent in finding that an affidavit provided probable cause for issuance of a warrant for the search of defendants' house but failed to provide probable cause for a search of the surrounding six-acre tract of land.

3. **Searches and Seizures § 23— warrant to search tract of land—sufficiency of affidavit**

   An affidavit gave a sufficiently detailed description of illegal activities and contraband expected to be found on a six-acre tract of land to support a conclusion that there was probable cause to believe that the entire tract was used in the drug business and the issuance of a warrant to search the tract.

4. **Searches and Seizures § 39— warrant for tract of land—search of vehicle not on tract**

   The scope of a warrant to search a six-acre tract of land was not exceeded by the search of a vehicle not parked on the tract where the vehicle was parked across the road from and appeared to be connected with a house and trailers which were expressly mentioned in the search warrants.

5. **Searches and Seizures § 1— apparently abandoned vehicles—no expectation of privacy**

   Even if vehicles were located on land owned or possessed by defendants, defendants could have no reasonable expectation of privacy as to the vehicles where they were in rough, grassy, undeveloped areas and appeared to be abandoned.

6. **Criminal Law § 114.3— no expression of opinion in instructions**

   The trial judge did not express an opinion on the evidence when he used an example similar to the facts of the case in explaining to the jury the difference between actual and constructive possession of marijuana.

7. **Criminal Law § 99.4— no expression of opinion by trial court**

   The trial court did not express an opinion in seeking to prevent defense counsel from eliciting mere guesses from a witness.

8. **Narcotics § 3.1— competency of evidence in marijuana case**

   In a prosecution for possession of marijuana with intent to sell, evidence of the marijuana, currency and income tax returns was relevant on the questions of whether defendants had constructive possession of the marijuana and whether they were running a drug business.

9. **Narcotics § 3.1— behavior of drug-sniffing dogs—foundation for testimony**

   The State laid an ample foundation for testimony as to the behavior of drug-sniffing dogs in a prosecution for possession of marijuana with intent to sell.

APPEAL by defendants from *Bailey, Judge.* Judgment entered 12 October 1983 in Superior Court, HARNETT County. Heard in the Court of Appeals 20 September 1984.

The defendants, Thomas and Shirley McLamb, were tried at the 10 October 1983 Session of Harnett County Superior Court on charges of possession of a controlled substance with intent to sell. The State presented evidence which tended to show that on 29 November 1982 a team of law enforcement officers searched the defendants' residence, the six-acre tract of land surrounding it, and two motor vehicles on or near the land. The officers possessed a search warrant. They found large amounts of currency, marijuana seeds, and business documents within the defendants' home. They also found sacks of marijuana in a pickup truck and in a 1968 Oldsmobile on or near the tract of land. These motor vehicles were shown to have been registered in Shirley Lang Mc-Lamb's name.

The defendants, although they did not take the stand, presented evidence that they did not own the six-acre tract of land.

They also showed that Shirley McLamb had tried to sell the Oldsmobile by bill of sale dated 8 April 1982. Finally, they presented evidence that various people in the community had access to the freezer in their home, which contained the marijuana seeds.

The defendants were both found guilty of possession of a controlled substance with intent to sell, and were both sentenced to five years in prison. From the judgments against them, they appeal.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Thomas H. Davis, Jr., for the State.*

*Perry W. Martin and Donnie R. Taylor, for defendant appellants.*

ARNOLD, Judge.

[1] The defendants first contend that the trial court erred in allowing the State to cross-examine the defendants' character witness as to knowledge of the defendants' prior similar acts and in denying the defendants' motion for mistrial based on the cross-examination. It is well-established in North Carolina that a character witness may not be asked whether he has heard of particular acts of misconduct by the defendant. *See State v. Hunt,* 287 N.C. 360, 215 S.E. 2d 40 (1975). The concern of this rule is that such questioning, which informs the jury that a defendant has a prior criminal record, introduces innumerable collateral issues and requires a defendant not only to defend his behavior in the case at bar, but over the course of a lifetime. *See State v. Robinson,* 226 N.C. 95, 96, 36 S.E. 2d 655, 656 (1946). It places too great a burden on the defendant and is prejudicial, especially when the defendant has chosen not to testify. In the case at bar, the defendants chose not to testify, and the prosecutor asked a character witness, Mr. Mauney, whether he was aware that the defendants had pled guilty to drug violations. Such cross-examination would ordinarily be improper and provide grounds for a new trial.

In the present case, however, the defense counsel introduced the subject of whether the defendants had been involved in prior criminal activity. On direct examination the defense counsel asked Mr. Mauney whether he had seen any illegal activity at the de-

fendants' home. He replied "no." Then the defense counsel asked Mr. Mauney what he knew of the defendant Tom McLamb's general reputation in the community. He responded that, "*Well, you hear a little and know a little,* but what I know I don't know anything about other than what Tom shared with me about his life when he came to the church and got saved and wanted to get his life straightened out." (Emphasis added.) The State then questioned Mr. Mauney as to whether he knew of Mr. McLamb's guilty pleas in two previous marijuana cases. He replied that he knew nothing of McLamb's guilt. The State asked Mauney whether he knew that Shirley McLamb had pled guilty to a drug violation. Because of defense objections and an exchange with the trial court, Mauney apparently did not respond. The State then asked, "Now, Mr. Mauney, in response to Mr. Stewart's question, you said there were little things you had heard around—." Mauney responded, "You hear a lot of things about a lot of people, I don't pay any attention to them." Mauney later said he had heard nothing about Tom McLamb.

The defense counsel thus broached the subject of the McLambs' reputation for illegal activity. Further, Mauney admitted on direct examination that he had heard "little things" about the McLambs, implying that their reputation in the community actually was not good. The prosecution thus could inquire into the witness's assertion that he was not aware of any illegal activity, and into the apparent contradiction in his remarks about the defendants' general reputation in the community. *See State v. Harris,* 49 N.C. App. 452, 271 S.E. 2d 579 (1980). In view of the totality of the circumstances, we do not believe that the prosecution's reference, in the course of this inquiry, to specific prior illegal acts by the defendants so prejudiced them that they were entitled to a new trial.

[2] The defendants contend further that the pretrial order of Judge Russell G. Walker, Jr., on 3 October 1983, concerning the defendants' motion to suppress evidence seized in the search of 29 November 1982, was in error. Defendants argue that the judge's conclusion that a warrant to search the entire six-acre tract was "impermissibly broad" was inconsistent with his ruling that any evidence seized from the McLamb house could be introduced as evidence at trial. Defendant misinterprets the order. Judge Walker found sufficient facts in the affidavit to provide probable

cause to warrant search of the McLamb house and one of the four trailers on the six-acre tract of land. He did not find sufficient facts in the affidavit to justify search of the *entire* tract, and left the question of the search of the Oldsmobile to the trial judge. That Judge Walker found certain allegations in the warrant insufficient to support a search warrant for the whole tract does not mean that other allegations in the warrant did not support the search of the McLamb residence.

Defendants contend further that Judge Bailey erred in denying the motion at trial to suppress evidence seized from the Oldsmobile and Ford truck parked on or near the six-acre tract. The defendants argue that the Oldsmobile was not located on the six-acre tract, and that, even so, the six-acre tract was not owned by the defendants. We observe that if the defendants did not own or possess the vehicles or the land where they were located then it is likely that they had no expectation of privacy regarding them and accordingly had no standing to contest the search and seizure of marijuana found in them. The Fourth Amendment right against unreasonable searches and seizures is personal and cannot be asserted by or on behalf of others. *See State v. Mettrick*, 54 N.C. App. 1, 11, 283 S.E. 2d 139, 145 (1981), *aff'd*, 305 N.C. 383, 289 S.E. 2d 354 (1982).

[3, 4] We find, however, that the affidavit gave a sufficiently detailed description of illegal activities and contraband expected to be found on the six-acre tract for Judge Bailey to conclude that there was probable cause to believe that the entire tract was used in the drug business. The fact that the Oldsmobile was parked across the road from the trailers, technically fifteen feet from the McLamb property line which ran down the center of the road, does not render search of it illegal. It appeared to be connected with the trailers or the McLamb house, which were expressly mentioned in the search warrant. It was parked on a grassy area at the side of the road. On the other side of it was a fence, and then a cultivated field. No residences, aside from the McLamb house and the four trailers, were in the vicinity. Search of the vehicles did not exceed the scope of the warrant. *See State v. Travatello*, 24 N.C. App. 511, 211 S.E. 2d 467 (1975); *State v. Logan*, 27 N.C. App. 150, 218 S.E. 2d 213 (1975).

[5]   Even if the warrant applied only to the McLamb house and the Melton trailer, and the two vehicles were found to be too far from them to be within their "curtilage," we observe that since the vehicles were in rough, grassy undeveloped areas and appeared to be abandoned, the McLambs could have had no reasonable expectation of privacy as to them. *See Oliver v. United States*, --- U.S. ---, 80 L.Ed. 2d 214, 104 S.Ct. --- (1984). This could be true even if the vehicles were located on land owned or possessed by the McLambs.

[6]   We reject the defendants' contention that the trial judge expressed opinions which prejudiced them, and so denied them a fair trial. Judge Bailey's interjections when the defense counsel was cross-examining a State's witness, and when the State was cross-examining a defense character witness, were intended to maintain the progress of a prolonged trial. *See State v. Agnew*, 294 N.C. 382, 241 S.E. 2d 684 (1978). Further, the judge's use of a hypothetical in the charge, somewhat similar to the facts of this case, did not, in light of the rest of his remarks, reflect his opinion as to the facts of the case. The judge, in explaining the difference between actual and constructive possession, said:

> As an example, if I have a handful of marijuana in my hand, I have actual possession of it. On the other hand, if I have it locked in my automobile out in the parking lot, I have constructive possession of it, or may have.

We are not convinced that this was an expression of opinion or that, if it was, there is a reasonable possibility that if the judge had not used "automobile" but, rather, had used "tractor" or "van," or "shed," the jury would have reached a different result. We do not find that defendants were prejudiced by the judge's explanation of the law of possession.

[7]   The defendants contend that the trial judge's failure to rule on objections also indicated an opinion and denied the defendants their right to effective assistance of counsel. The trial judge sustained objections to repeated requests by defense counsel of a witness to estimate the distance between the Oldsmobile and the mobile homes, when the witness stated he had taken no measurements and could not give an accurate opinion on the distance. The trial judge merely sought to prevent the defense from eliciting mere guesses from the witness, and sought also to maintain the

progress of the trial. We do not believe that this reflected an opinion or that the defendants were rendered ineffective assistance of counsel by the judge's actions.

We reach finally the defendants' contention that the judge erred in his charge to the jury. They contend first that he did not instruct the jury properly on the question of ownership of the Oldsmobile. Yet, the judge stated:

> That at some time before this search a bill of sale had been executed conveying the Oldsmobile car to one Frazier, who is said to live in Richmond, Virginia. There was no transfer of title in the State of North Carolina, the title remained in the name of Shirley Lang McLamb.

Since Ms. McLamb had not assigned a certificate of title, and no application for a new title had been made, title indeed had not passed, *see Nationwide Mutual Insurance Co. v. Hayes*, 276 N.C. 620, 174 S.E. 2d 511 (1970), and the judge's instructions were correct.

The judge's instructions on ownership and possession were adequate for purposes of the evidence presented.

The defendants' contention that the trial judge failed to instruct on simple possession of marijuana as well as on possession with intent to sell has no merit. The record indicates that the judge did explain both crimes and the circumstances in which the jury could find them to have occurred.

[8] The court's admission of the marijuana, currency, and income tax returns was relevant to the questions of whether defendants had constructive possession of the marijuana and of whether they were running a drug business. The State presented sufficient evidence to take the case to the jury. The trial court properly denied defendants' motion to dismiss at the close of all the evidence.

[9] The State laid an ample foundation for testimony as to the behavior of drug-sniffing dogs. We have had no need to reach the constitutional question of the use of such dogs in searches, although we observe that in a case such as this, the use of the dogs in open fields and around abandoned vehicles was not so intrusive as to bring the Fourth Amendment into play.

No error.

Judges WELLS and HILL concur.