**STATE of Missouri, Respondent,**

v.

**Glennon Paul SWEET, Appellant.**

**No. 70174.**

Supreme Court of Missouri,
En Banc.

Sept. 11, 1990.

As Modified on Denial of Rehearing
Oct. 16, 1990.

Nancy A. McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

RENDLEN, Judge.

Finding defendant guilty of murder in the first degree for the slaying of highway patrolman Russell Harper, the jury assessed punishment at death, hence the appeal falls within this Court's exclusive appellate jurisdiction. Mo. Const. art. V, § 3. Further, defendant's motion for postconviction relief pursuant to Rule 29.15 was denied by the court after evidentiary hearing and that ruling will also be reviewed in this proceeding. Both judgments are affirmed.

The evidence favorable to the verdict abundantly supports the conviction. At approximately 4:30 p.m. on February 8, 1987, Trooper Russell Harper, of the Missouri State Highway Patrol, was parked on Highway 60 near Springfield operating a radar device when a mid 1960's red and white Chevrolet pickup truck passed at an excessive rate of speed. Harper, activating the warning lights, gave chase for approximately one and one-half miles when the truck turned onto a farm road and drove for a short distance before stopping. Trooper Harper followed the car onto the farm road and pulled up behind it. Before the trooper could dismount, defendant leapt from the truck, stepped toward the patrol car and fired several bursts of gunfire. A bullet struck Harper's head, causing massive skull fractures, brain damage and death. Twenty-nine bullet holes or indentations were found in the car, and one shot pierced the trooper's leg. The patrol car rolled into a ditch and defendant fled in the truck.

Defendant drove to the home of Donald Bills, where the two began the arduous task of disguising the truck by dismantling and refurbishing it. Working in the garage, they replaced tires, stripped the paint, removed the gun racks, and painted the cab black, while defendant, preoccupied with reports on the police scanner, shaved the moustache he had worn for several years. At approximately 8:45 p.m. the following evening, troopers arrived at the Bills residence on a tip that defendant had lived in an old bus parked on the property. Bills' girlfriend, who stayed at the residence occasionally, answered the door and stated that no one else was there but the troopers were welcome to look around the property. Trooper Middleton, fearful for his safety, cautiously examined a junked vehicle about 100 yards from the house, and in so doing noticed the trunk lid was slightly ajar. Raising the lid further, Middleton saw defendant's H.K. 93 semi-automatic assault rifle, later determined to be the murder weapon. Bills arrived shortly thereafter and signed a consent to search; nevertheless, a warrant was obtained and on a search of the house, defendant was discovered hiding in the attic with a copy of the newspaper pertaining to the murder of Trooper Harper.

Witnesses to the slaying identified defendant as the assailant and gun cartridges found at the murder scene were found to have been fired from defendant's rifle. In spite of the overwhelming evidence against him, defendant testified that he did not shoot Harper. The jury found him guilty of first degree murder and fixed his punishment at death, finding as aggravating circumstances the murder was committed against a peace officer engaged in the performance of his official duty, and because of the outstanding warrant for defendant's arrest, that it was committed for the purpose of avoiding a lawful arrest.

## I. Direct Appeal

Defendant first complains the trial court erred in overruling his motion to suppress evidence of the H.K. 93 semi-automatic rifle found in the trunk of the abandoned car. The trial court ruled "that defendant had no reasonable expectation of privacy on the premises of Donald Bills." In reviewing this finding, "the facts and reasonable inferences arising therefrom,

are to be stated favorably to the order challenged on appeal." *State v. Blair*, 691 S.W.2d 259, 260 (Mo. banc 1985), *cert. denied*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). This Court "is free to disregard contrary evidence and inferences and is to affirm the trial court's ruling on a motion to suppress if the evidence is sufficient to sustain its finding." *Id.* Defendant bears the burden of demonstrating that he had a "reasonable expectation of privacy" in the property searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Rawlings v. Kentucky*, 448 U.S. 98, 104–5, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980). Regarding automobiles, the United States Supreme Court has stated: "warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not." *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976); *see also State v. Achter*, 512 S.W.2d 894, 901 (Mo. App.1974). One reason for this, in addition to the inherent mobility of automobiles, is "because the expectation of privacy with respect to one's automobile is *significantly less* than that relating to one's home or office." *Opperman*, 428 U.S. at 367, 96 S.Ct. at 3096 (emphasis added). Furthermore, the Supreme Court has held that intrusion into "open fields" is not an unreasonable search proscribed by the Fourth Amendment, for there is no reasonable expectation of privacy in such areas. *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214 (1984). Four factors are to be considered in determining the extent of a home's curtilage, which enjoys a higher expectation of privacy: (1) the proximity of the area claimed to be the curtilage of the home; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the use to which the area is put; and (4) the steps taken by the resident to protect the area from observation by passers-by. *United*

States v. Dunn*, 480 U.S. 294, 300, 107 S.Ct. 1134, 1139, 94 L.Ed.2d 326 (1987).

This case bears a remarkable similarity to *United States v. Ramapuram*, 632 F.2d 1149, 1155 (4th Cir.1980), in which the court held the defendant had no reasonable expectation of privacy in the contents of the trunk of a "junker" car in an open field. There police searched a vehicle parked on a farm approximately 150 to 200 feet from the road. The car was plainly an abandoned "junker," the doors were unlocked, and there was no lock on the trunk. Police opened the trunk and discovered 88 sticks of stolen dynamite. In the present case the car was left in a rural area, approximately 300 feet from Bills' residence, which was not within the curtilage of the dwelling. Further, in *Ramapuram* defendant "failed to secure the trunk of the 'junker,'" *id.* at 1156, and here because the lid was left ajar, defendant could not be said to have a reasonable expectation of privacy rendering a search thereof unreasonable.[1]

Also instructive is *United States v. Dunn*, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987), involving a barn near the house. There the barn was fifty yards from the fence surrounding the house and sixty yards from the house itself, and it was held permissible for the police to cross the fence and look inside the barn. *See also State v. Supinski*, 779 S.W.2d 258 (Mo.App.1989), where officers scaled fences in order to search a shed 45 to 50 yards from the road. If defendants in those cases had no reasonable expectation of privacy in storage areas located in open fields secured by fences, *a fortiori* it cannot be said defendant had a reasonable expectation of privacy in an abandoned wrecked vehicle with windows broken, the hood and at least one wheel missing, and the trunk left ajar in an area well removed from the house. Further, the car was parked with its trunk toward the south property line abutting a scrub wooded area in a position not visible from the main house. The offi-

1. This case may be distinguished from *United States v. Bradshaw*, 490 F.2d 1097 (4th Cir. 1974), *cert. denied*, 419 U.S. 895, 95 S.Ct. 173, 42 L.Ed.2d 139 (1974), where the junked vehicle was parked next to the house and the court held

the defendant had a reasonable expectation of privacy therein. *See also State v. McLamb*, 70 N.C.App. 712, 321 S.E.2d 225 (1984) (junked vehicle near residence was within curtilage and thus within scope of search warrant).

cer stated he did not recall if there was a fence on the east side of the land; however, a photographic exhibit shows what appears to be a four-strand barbed wire fence south of the car. Nevertheless, nothing barred access to the car from any other direction. The contention is denied.[2]

■ Defendant maintains the trial court erred in striking venireman Charlene Gill, who expressed reservations concerning the death penalty, thus denying him a fair and impartial jury. This strike, defendant argues, in effect gave the state an extra peremptory challenge. Gill was ambivalent regarding whether she could listen to the evidence, for her son was having a birthday and a program at school and she would be unable to share those experiences with him, and further, her husband was attending night school. Though the trial court stated a general policy that a "court strike" would be made of any person who had a personal problem in serving on the jury,[3] the record demonstrates that Gill was not actually removed from the venire panel:

Mr. Gaither: I thought you were going to place some people towards the end of the panel, is that correct?

\* \* \* \* \* \*

The Court: That's what I just did was to place them near the end when I took them off, I called them a court strike, but I'm really taking them off and placing them at the end.

Mr. Gaither: I see.

The Court: That's what I did with Charlene Gill, in fact.

Defendant's point, assuming it was properly preserved for appeal, is without merit.

■ Defendant next charges error in the prosecutor's questioning during voir dire whether the members of the array could vote for the death penalty. Though it is error to ask prospective jurors to commit to a particular course of future conduct, *State*

*v. Norton*, 681 S.W.2d 497, 499 (Mo.App. 1984), such is not this case. The questioning merely sought to determine whether the jurors would be able to consider the full range of punishment and this is quite permissible. *State v. Leisure*, 749 S.W.2d 366, 373–74 (Mo. banc 1988).

■ It is next claimed the trial court abused its discretion in denying defendant's motion for discovery sanctions and in denying his motion for continuance. The pertinent portion of defendant's discovery request pursuant to Rule 25.03 is as follows:

1. The names and last known addresses of persons whom the State intends to call as witnesses at any hearing or at the trial, *together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements;*

\* \* \* \* \* \*

5. *Any reports or statements of experts*, made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons;

\* \* \* \* \* \*

9. Any material or information, within the possession or control of the State, which tends to negate the guilt of the defendant as to the offense charged, or reduce the punishment.

Defendant filed a motion for exclusion of the testimony of Thomas Buel, or in the alternative, for a second continuance, on the ground that he had not been provided with one of Buel's reference books, the "Criminal Laboratory Information Systems Manual, General Firearms Characteristics," and Buel's notes concerning his examination of defendant's H.K. 93 rifle. However, defendant had been provided a copy of Buel's report showing a match between

---

**2.** *See also State v. Achter,* 512 S.W.2d 894 (Mo. App.1974), where the court held defendant had no reasonable expectation of privacy in a vehicle abandoned when defendant fled from state troopers.

**3.** Section 494.031(5), RSMo 1986, allows the court to excuse from service as a juror "[a]ny person upon whom service as a juror would in the judgment of the court impose extreme hardship."

brass cartridges found at defendant's home and the cartridges found at the crime scene. The trial court ruled there were no discovery violations, and we affirm this conclusion, for these additional materials do not fall within the scope of the discovery request. Nevertheless, the trial court ordered that the book and notes be produced, thus not only is there no abuse of discretion, but the trial court went to special lengths to accommodate defendant in the preparation of his case. Further, the motion for a continuance was not accompanied by an affidavit setting forth the facts upon which the application was based, and this alone is grounds for denial. *State v. Tettamble*, 746 S.W.2d 433, 439 (Mo.App.1988). The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986), which will not be disturbed absent a strong showing of abuse, and the party which requested the continuance bears the burden of demonstrating prejudice resulting from the denial of such. *State v. Sandles*, 740 S.W.2d 169, 175 (Mo. banc 1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988). We find no abuse of discretion in refusing to allow defendant additional time to examine materials gratuitously provided him.

In a similar vein, defendant contends the trial court abused its discretion in granting the state's three motions to endorse witnesses. On November 12, 1987, the state filed a motion to endorse five witnesses. On November 25, the state submitted a motion to endorse two more witnesses, and on November 30, the state moved to endorse four additional witnesses. The court granted the motions at a hearing held on December 4, and trial began December 7. As to most of these witnesses, defendant had been previously provided with a list of their expected testimony and their reports, and he had been granted a continuance in August to depose John O'Neil, the state's anticipated ballistics expert. However, of all these witnesses, only Matthews and Pennington actually testified at trial, and Pennington had been endorsed as a witness by defendant. The trial court possesses broad discretion in permitting late endorsement of witnesses, *State v. Lamphier*, 745 S.W.2d 166, 170 (Mo.App.1987), and among the factors to be considered on review are "whether defendant waived the objection, whether the state intended surprise or acted deceptively or in bad faith, with intention to disadvantage defendant; whether in fact defendant was surprised and suffered any disadvantage, and whether the type of testimony given might readily have been contemplated." *State v. Stokes*, 638 S.W.2d 715, 719 (Mo. banc 1982), *cert. denied* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983) (citations omitted). Here the trial court found defendant was not prejudiced by the addition of the witnesses' names and "the state has to all appearances acted in good faith throughout the entire proceeding in furnishing information to defendant as soon as it reasonably became available, or at least as soon as it became available to him." In light of the fact that only two of the witnesses testified, one of whom was endorsed by defendant, it is difficult to see how defendant was prejudiced in the presentation of his case. Neither does it appear that defendant was surprised or that the witnesses' expected testimony might not have been contemplated, as the state had previously provided him detailed background information on these witnesses. The point is denied.[4]

---

**4.** Similarly, defendant raises a point of plain error in claiming the state failed to disclose its penalty phase witnesses. On August 28, the state notified defendant that it would not call any witness during the penalty phase who had not previously been disclosed, but might call any witness already revealed to defendant. Although the state's conduct did not meet the standards of § 565.005, RSMo, which requires that "[t]he names of all persons whom the party intends to to call as witnesses at the second stage of the trial" be given "[a]t a reasonable time before the commencement of the first stage," such a failure to disclose does not warrant reversal unless it results in fundamental unfairness. *State v. Lingar*, 726 S.W.2d 728, 738 (Mo. banc 1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987). The state called only one witness to testify during the penalty phase and the trial court sustained de-

Defendant next asserts error in permitting evidence of a Texas warrant for defendant's arrest under charges of carrying a concealed weapon and possession of a controlled substance which was outstanding at the time of the incident, and in allowing reference thereto in closing argument. Recently this Court held evidence of the defendant's escape from prison was admissible as relevant to motive, *State v. Oxford*, 791 S.W.2d 396, 398–99 (Mo. banc 1990), and similarly we hold that evidence of the warrant was admissible here. Though, as defendant complains, he had not been returned to Texas despite two previous arrests in Missouri, the evidence was admissible to show motive because defendant had reason to murder Trooper Harper to avoid the consequences of his prior unlawful conduct. The trial court committed no abuse of discretion here.

Defendant argues the trial court should have permitted Donald Bills to testify that defendant had denied shooting Trooper Harper; defendant's alleged statement was made one or two days after the murder. This statement was a self-serving declaration not part of the *res gestae* and thus plainly inadmissible. *State v. Wilkerson*, 616 S.W.2d 829, 834 (Mo. banc 1981); *State v. McIntyre*, 654 S.W.2d 188, 190 (Mo.App.1983).

Error is next charged in permitting the prosecutor to ask Judy Meyer, who testified during the penalty phase as to defendant's good character, if she were aware of defendant's prior arrests. The holding in *State v. Byrd*, 676 S.W.2d 494 (Mo. banc 1984), stands squarely contrary to this claim of error. There the Court stated that "if a witness testifies to his own (or in this case someone else's) opinion of the defendant's character, then the prosecutor may test the legitimacy of the basis for that opinion by inquiring whether the witness (or other person) is aware of pertinent bad acts of defendant, including his *arrest* on other charges." *Id.* at 505. In *Byrd*, as here, the witness gave his opinion of defendant's character, and the prosecu-

tor was properly permitted to challenge the basis of that opinion.

Defendant contends the Missouri death penalty statute improperly vests unrestricted discretion in the prosecutor to seek the death penalty, which contention was admittedly rejected in *State v. McMillin*, 783 S.W.2d 82, 101–102 (Mo. banc 1990). *See also State v. Smith*, 781 S.W.2d 761, 770 (Mo. banc 1989). Defendant further complains that this Court fails to engage in meaningful proportionality review. However, as this Court has previously held, "proportionality review is not a constitutional requirement." *State v. Byrd*, 676 S.W.2d at 507 n. 11.

Finally defendant claims the trial court should have admitted into evidence defendant's family photo albums as mitigating evidence during the penalty phase. First, it should be noted that defendant failed to lay a proper foundation for the photographs, and further, it is difficult to see how the photographs are even tangentially relevant to defendant's character. Photographs of such activities as fishing and water skiing lend little or nothing to the issue of defendant's moral character and defendant has presented no authority for their admissibility.

## A. Plain Error Review

The remaining points raised by defendant on direct appeal are not properly preserved and may be reviewed only as plain error. Defendant's *Mills v. Maryland* [5] argument must be summarily rejected, for in *State v. Petary*, 790 S.W.2d 243 (Mo. banc 1990), the issue has been squarely decided adversely to his position.

Defendant complains he was denied his constitutional right to be judged by an impartial jury when the state employed peremptory challenges to remove two veniremen who expressed reluctance to consider the death penalty but were not excludable for cause. Defendant admittedly has no authority to support this proposition

---

fendant's objection to his testimony on grounds of relevancy. No plain error occurred.

5. 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988).

and this unconvincing contention falls far short of the level required for plain error.

The next attack by defendant, leveled against photographs admitted in evidence, flies in the face of the well-established case law of this jurisdiction. State's Exhibit No. 1, a Highway Patrol photograph of Trooper Harper in uniform, was relevant to identify the victim. *State v. Davis*, 653 S.W.2d 167, 174–75 (Mo. banc 1983). Exhibit No. 89, a close-up photograph of the head wound, and No. 93, a view of the skull, were relevant to show "the nature and location of wounds, and the cause of death." *State v. Schneider*, 736 S.W.2d 392, 403 (Mo. banc 1987), *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). Exhibit 89 displays the measurements of the wound and No. 93 shows the skull fractures, thus the exhibits are not cumulative. There was no error, much less plain error, in the admission of these photos.

## II. Review of the Motion for Postconviction Relief

On appeal from the denial of his 29.15 motion, defendant raises numerous complaints of allegedly ineffective assistance of counsel, but many of the contentions were not presented in a timely motion pursuant to the rule. Defendant filed his first motion *pro se* and the Public Defender was appointed to represent him on November 29, 1988; defendant then had a maximum of sixty days to file an amended motion. Rule 29.15(f). The amended motion was not filed until April 14, 1989, therefore points not brought in the original motion were not properly raised. *Sloan v. State*, 779 S.W.2d 580, 581 (Mo. banc 1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990). However, we have considered these points *ex gratia* and find them meritless.

In examining the various claims of ineffective assistance of counsel, we bear in mind the oft-repeated rule that for a claim to succeed, not only must counsel's performance be found deficient (below an objective standard of reasonableness), but the deficiency must so prejudice the defense

that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). Further, this Court's review of the trial court's denial of the 29.15 motion is limited to a determination whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 29.15(j). In discussing the allegations of ineffective assistance of counsel preserved for review, we set forth each claim in italics with the disposition thereof following.

*Failure to obtain an independent ballistics test.* The motion court found that two examinations had been performed and were consistent in determining that the projectile fragments taken from Trooper Harper's body were fired from defendant's rifle. Further, counsel decided an independent ballistics test would not have been helpful to defendant, and such trial strategy decisions do not bespeak ineffective assistance of counsel. The finding of the trial court is not clearly erroneous. *See State v. Oxford*, 791 S.W.2d 396, 401 n. 2 (Mo. banc 1990).

*Failure to introduce evidence of his propensity to peaceably surrender when arrested.* The motion court's findings that defendant made a practice of attempting to outrun law officers and that counsel was not ineffective for failing to emphasize defendant's criminal activities are not clearly erroneous.

*Failure to show that the camouflaged pants found by law enforcement officers, but not introduced into evidence, did not fit defendant.* The motion court's finding that defendant failed to demonstrate that the pants would not fit is not clearly erroneous, for the prosecutor testified at the hearing that the pants were "one size fits all."

*Failure to fully consult defendant in changing venue to Clay County.* The motion court found counsel wisely made a trial strategy decision which will not be second-guessed. Counsel was cer-

tainly better equipped than defendant to make such a decision, which worked to defendant's advantage rather than to his prejudice.

*Failure to impeach the state's eyewitnesses regarding their ability to perceive and opportunity to observe.* The motion court found the following:

> Mr. Gaither challenged eyewitness testimony appropriately. Eyewitnesses were questioned and reports were reviewed by counsel. Review of the transcript and observations of eyewitness testimony at the hearing shows that trial counsel was in no way ineffective in his performance in this regard.

We have reviewed the transcript and determine that the motion court's conclusion was not clearly erroneous.

■ *Failure to call or thoroughly examine certain witnesses during the guilt phase.* Counsel's decision not to call Carolyn Hawkins, a witness to the shooting who knew defendant, was a question of trial strategy, for she could not identify the assailant. As to Jan Bean, whom defendant alleges would have testified that defendant was going to voluntarily turn himself in, the evidence refutes the claim. The same is true of Nusse, Wolfe and Bills, whom defendant claims would have testified about his attempt to turn himself in, for the testimony of these witnesses at the hearing refutes his contention.

■ Freddie Hensley was a friend of defendant's who claimed she was at the crime scene and saw a truck similar to defendant's but not his, and driven by a man who resembled defendant but it was not he. Defense counsel personally drove by the residence of the alleged double, and finding that the truck at that place had a green door, decided not to call Hensley. The motion court noted that "evidence which can have no other effect other than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another is not admissible." *State v. LaRette*, 648 S.W.2d

96, 103 (Mo. banc 1983); *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). The motion court added that Hensley testified in the penalty phase, and concluded that "[b]ased upon observation of this witness, no deviation from competent representation is shown by failure to call this witness in the guilt-innocence phase of the trial." The motion court's ruling is not clearly erroneous.[6]

■ *Failure to call certain witnesses during the penalty phase.* Only defendant's claims as to McManis, Sanders, Clift and Henry were properly presented. Though these witnesses could have presented some favorable testimony as to defendant's character, McManis and Sanders could also have presented evidence unfavorable to defendant, and defendant fails to show how additional testimony from these witnesses could have created a reasonable probability that the outcome would have been different.

■ *Ineffective assistance of 29.15 counsel.* This claim is beyond the scope of the 29.15 proceeding. *Sloan v. State*, 779 S.W.2d at 583.

### III. Independent Review

■ We next conduct our independent review of the death sentence pursuant to § 565.035.3, RSMo 1986. First we find the evidence supports the aggravating circumstances as determined by the jury. There is no doubt the murder was committed against a peace officer engaged in the performance of his official duty, § 565.032.2(8), and the murder was also committed for the purpose of avoiding lawful arrest. § 565.032.2(10). Further, defendant does not dispute the jury's finding as nonstatutory aggravating circumstances that defendant had previously pled guilty to shooting into a dwelling and felonious assault without malice.

Next, in determining "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases,

---

**6.** Defendant has failed to support with argument his contention as to Joe Young and thus has waived the claim. Rule 84.04(d).

considering both the crime, the strength of the evidence and the defendant," § 565.035.3(3), we must consider the fact that the death penalty has been applied in numerous cases involving killings of law enforcement or corrections officers. *E.g., State v. Mallett,* 732 S.W.2d 527 (Mo. banc 1987), *cert. denied,* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1988); *State v. Driscoll,* 711 S.W.2d 512 (Mo. banc 1986), *cert. denied,* 479 U.S. 922, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986); *State v. Roberts,* 709 S.W.2d 857 (Mo. banc 1986), *cert. denied,* 479 U.S. 946, 107 S.Ct. 427, 93 L.Ed.2d 378 (1986); *State v. McDonald,* 661 S.W.2d 497 (Mo. banc 1983), *cert. denied,* 471 U.S. 1009, 105 S.Ct. 1875, 85 L.Ed.2d 168 (1985). Also, it must be noted the evidence of guilt was overwhelming and this was a cold-blooded surprise attack by a defendant who then was sought under outstanding arrest warrants on drug and weapons charges.

Finally examining "[w]hether the sentence of death was imposed under the influence of passion, prejudice, or any other factor," we find no evidence of such from the transcript or legal file and hold the penalty was rationally imposed in proportion to the crime.

Affirmed.

BLACKMAR, C.J., ROBERTSON, HIGGINS, COVINGTON and HOLSTEIN, JJ., and MORGAN, Senior Judge, concur.

BILLINGS, J., not sitting.