James Dwight STALLINGS, Appellant,

v.

Dennis BENSON, Warden Minnesota Correctional Facility at Oak Park Heights, Appellee.

No. 93–2130.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 18, 1994.

Decided June 9, 1994.

Stigger testified he had gone to Hutchinson's apartment because she was fearful of her boyfriend, Stallings, who had threatened to beat her earlier in the evening. In the apartment at the time of the beating was Hutchinson's twelve-year-old cousin, Kenneth Hutchinson (Kenneth).

After the assault, Hutchinson ran to a neighbor's apartment to call 911. Officer Smith testified at the trial that he and the paramedics arrived on the scene within six minutes of the incident. Hutchinson told Officer Smith that Stallings, accompanied by two friends, broke into her apartment, jumped on her bed and began to beat Stigger with a hammer. Kenneth told the officer that he was asleep during the attack and didn't see or hear anything. Approximately one week after the beating, Hutchinson filed a similar written statement with the police.

Steven Russett, St. Paul, MN, argued, for appellant.

Steven DeCoster, St. Paul, MN, argued (Hubert H. Humphrey, III, Tom Foley and Steven C. DeCoster, on the brief), for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

James Dwight Stallings appeals the district court's[1] denial of his application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

Stallings was convicted of assaulting Darren Stigger while Stigger was sleeping in Melinda Hutchinson's apartment. Stigger was severely beaten on the head with a blunt object, suffering multiple skull fractures.

Stallings was subsequently arrested and charged with assaulting Stigger. At the probable cause hearing,[2] Hutchinson's and Kenneth's stories changed. Hutchinson testified that Stallings, rather than beating Stigger, saved his life by pulling the assailant off of him, thus recanting her earlier written and oral statements (Recantation Testimony). Kenneth testified that he saw Stallings and Stallings' two friends enter the apartment and go to Hutchinson's bedroom with a hammer. He then heard Hutchinson beg Stallings to stop beating Stigger.

Hutchinson, who was served with a subpoena and for whom the court issued a bench warrant, failed to appear as a witness at Stallings' trial. Kenneth testified. According to Kenneth's trial testimony, he did not see Stallings enter the apartment with a hammer, but he did hear the incident and see Stallings leave the apartment carrying a hammer. Kenneth testified: "[H]im and Melinda was arguing and he had slapped Melinda and then he started beating on Darren.... Melinda kept on telling Jay [Stallings] to stop hitting on Darren. He had slapped Melinda down because you could

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

2. In Minnesota, a probable cause or Florence hearing is conducted according to the procedures set up by the Minnesota Supreme Court in *State v. Florence,* 306 Minn. 442, 239 N.W.2d 892 (1976).

hear a smack...." Tr. at 100. According to Kenneth, Stallings ripped the telephone from the wall when he left the apartment.

Officer Smith testified:

Ms. Hutchinson told me that her and Stigger were laying on the bed when two men entered the apartment.... [T]hey were Stallings, James Dwight, and another person by the name of O'Dell with the nickname of O.D. They entered the apartment, Stallings jumped on top of Stigger and started hitting him on the head with a hammer. As he was hitting him with the hammer, she tried to stop Stallings from doing this.

Tr. at 46. After the government rested its case, still unable to produce Hutchinson, Stallings moved to admit Hutchinson's Recantation Testimony. The state court denied the motion, finding that Minnesota's former testimony exception to the hearsay rule was inapplicable and that the "catchall" exception to the hearsay rule likewise did not apply because Hutchinson's testimony was inherently untrustworthy. The court stated:

[I]t's obvious that Melinda Hutchinson would be the only person who could really clarify this and clear it up. She has chosen not to appear.... I can only feel because she is in town, she spoke to this Court yesterday afternoon and refuses to come in, be sworn, and before a jury that is trying this defendant state what the situation is, that there is no trustworthiness as far as I am concerned to the comments or the statements, the questions and answers contained in that [probable cause] [h]earing. It's as simple as that.

Tr. Addendum at 24–25.

The Minnesota Court of Appeals reversed Stallings' conviction and remanded for a new trial, holding that due process required that Stallings be allowed to admit Hutchinson's sworn Recantation Testimony under Minnesota's residual exception to the hearsay rule. *State v. Stallings,* 474 N.W.2d 645, 650 (Minn.Ct.App.1991). The Minnesota Supreme Court disagreed and reversed, holding that refusing to admit testimony under the "catchall" exception may properly be predi-

cated upon the " 'presence of suspicious circumstances raising doubts as to the motives or accuracy of the declarant.' " *State v. Stallings,* 478 N.W.2d 491, 496 (Minn.1991) (quoting 4 D. Louisell and C. Mueller, *Federal Evidence* § 472 at 929–30 (1980)).

■ For evidentiary error "to warrant habeas relief, the trial court's error must have been so egregious that it denied the defendant his right to due process." *Mercer v. Armontrout,* 844 F.2d 582, 587 (8th Cir.), *cert. denied,* 488 U.S. 900, 109 S.Ct. 249, 102 L.Ed.2d 238 (1988). The error must have been so great "that it fatally infected the trial and failed to afford petitioner the fundamental fairness which is the essence of due process." *Id.*

■ Stallings does not argue that Hutchinson's Recantation Testimony was properly admissible under the Minnesota Rules of Evidence. Rather, he contends the state court's application of the rules "defeat[ed] the ends of justice," *see Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 1049, 35 L.Ed.2d 297 (1973), and, thus, to protect his due process rights, Hutchinson's Recantation Testimony, replete with indicia of reliability,[3] should have been admitted into evidence.

■ Our task is to " 'review the totality of the facts ... and analyze the fairness of the particular trial under consideration.' " *Turner v. Armontrout,* 845 F.2d 165, 169 (8th Cir.) (quoting *Maggitt v. Wyrick,* 533 F.2d 383, 385 (8th Cir.), *cert. denied,* 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976)), *cert. denied,* 488 U.S. 928, 109 S.Ct. 315, 102 L.Ed.2d 333 (1988). "When due process issues are presented, the court must balance the importance of the evidence against the state interest in exclusion." *Perry v. Rushen,* 713 F.2d 1447, 1452 (9th Cir.1983), *cert. denied,* 469 U.S. 838, 105 S.Ct. 137, 83 L.Ed.2d 77 (1984). "Where the state interest is strong, only the exclusion of critical, *reliable* and highly probative evidence will violate due process." *Id.* (emphasis added).

Because Hutchinson's Recantation Testimony would have been significant exculpatory evidence, we cannot say that it was nei-

---

**3.** The testimony was made under oath and was    subject to cross-examination.

ther probative nor critical. However, our inquiry does not end there. Such evidence must also have substantial indicia of reliability. *Chambers,* 410 U.S. at 300, 93 S.Ct. at 1048; *accord Turner,* 845 F.2d at 169. We hold that Hutchinson's sworn Recantation Testimony was untrustworthy, and, therefore, its exclusion did not deprive Stallings of a fundamentally fair trial.

There was substantial evidence that Hutchinson's "changed" testimony was related to a significant fear of harm from Stallings. Hutchinson moved into a women's shelter after the beating incident. She testified regarding Stallings, "[h]e is a very violent man." Florence Tr. at 45. She was well aware that her presence was mandated at the trial. She received the subpoena. She spoke to the judge. Nevertheless, she failed to appear in court to testify. The state court concluded that such actions on the part of Hutchinson significantly eroded the trustworthiness of her Recantation Testimony. We agree.

After examining the totality of the circumstances, we hold the state court did not deprive Stallings of a fundamentally fair trial through its exclusion of Hutchinson's Recantation Testimony. Therefore, we affirm the district court's denial of the petition for habeas corpus.