United States Court of Appeals
FOR THE EIGHTH CIRCUIT

_____

No. 96-2581

_____

| | | |
|---|---|---|
| Glennon Paul Sweet, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Paul Delo, Superintendent, Potosi | * | |
| Correctional Center, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: June 12, 1997
Filed: September 10, 1997

_____

Before BOWMAN, FLOYD R. GIBSON, and MORRIS SHEPPARD ARNOLD,
Circuit Judges.

_____

BOWMAN, Circuit Judge.

Glennon Sweet, a prisoner on Missouri's death row, appeals from the judgment of the District Court[1] denying his petition for habeas corpus. We affirm.

_____

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

# I.

On February 8, 1987, Sweet sped past Trooper Russell Harper of the Missouri State Highway Patrol on a highway outside of Springfield, Missouri. Harper turned on his signal lights and gave chase, following Sweet as he turned onto a side road. After Sweet stopped and opened the door of his truck, Harper slowly drove up behind him. Sweet jumped out of the truck, aimed his semi-automatic assault rifle at the trooper's car, and fired several bursts. Twenty-nine bullets hit Harper's vehicle; one struck Harper in the head, killing him. Harper never even unbuttoned the holster flap covering his service revolver.

Sweet was arrested and charged with first-degree murder. After a change of venue to Clay County, he was tried and found guilty. Finding as aggravating circumstances that the murder was committed against a peace officer engaged in his official duties and that it was committed for the purpose of avoiding a lawful arrest, the jury on December 12, 1987 fixed the punishment at death. Following the denial of his motion for a new trial, on January 20, 1988, Sweet was sentenced to death. Sweet took a timely direct appeal to the Missouri Supreme Court and also, pursuant to Missouri Supreme Court Rule 29.15,[2] filed a pro se post-conviction motion in Clay County

---

[2]Rule 29.15, which became effective shortly before Sweet was sentenced, provides a post-conviction proceeding for, inter alia, claims "that the conviction or sentence imposed violates the constitution and laws of [Missouri] or the constitution of the United States." Mo. Sup. Ct. R. 29.15(a). At the time Sweet was sentenced, Rule 29.15 required the defendant to file a motion in the sentencing court within thirty days after the transcript was filed in the direct appeal. See Mo. Sup. Ct. R. 29.15(b). The direct appeal was then suspended and later consolidated with the appeal from the judgment on the 29.15 motion. See Mo. Sup. Ct. R. 29.15(*l*). Missouri has since abandoned the consolidated appeal procedure. A Rule 29.15 motion is now filed after the disposition of the direct appeal. See Mo. Sup. Ct. R. 29.15(b) (effective Jan. 1, 1996); Sloan v. Bowersox, 77 F.3d 234, 235 (8th Cir.) (recognizing amended rule), cert. denied, 116 S. Ct. 980 (1996). The prior version of the rule governs Sweet's post-

Circuit Court, raising a number of constitutional claims. The motion court appointed counsel for Sweet. More than four months after counsel was appointed, Sweet amended his 29.15 motion to assert additional claims. This amended petition was not timely, however, because Sweet was required to file any amendment no later than sixty days after the appointment of counsel. See Mo. Sup. Ct. R. 29.15(f). The motion court denied Sweet's 29.15 motion in September 1989.

In the consolidated appeal, the Missouri Supreme Court held that the claims raised for the first time in Sweet's amended 29.15 motion were not properly raised and declined to consider them. See State v. Sweet, 796 S.W.2d 607, 615 (Mo. 1990) (en banc).[3] The court affirmed Sweet's conviction and sentence in the direct appeal and affirmed on the merits the denial of the timely 29.15 claims in the post-conviction appeal. See id. at 610-17. The United States Supreme Court denied certiorari on March 18, 1991. Sweet v. Missouri, 499 U.S. 932 (1991).

conviction remedies, however, see Mo. Sup. Ct. R. 29.15(m) (1996), and citations in this opinion to Rule 29.15 refer to the version of the rule in effect at the time Sweet was sentenced.

[3]Several months after affirming Sweet's conviction, the Missouri Supreme Court developed a doctrine of "abandonment" to mitigate the harsh consequences of appointed counsel's failure to comply with the strict deadlines of Rule 29.15. See Sanders v. State, 807 S.W.2d 493, 494-95 (Mo. 1991) (en banc) (remanding to circuit court for examination of abandonment claim in circumstances similar to those of Sweet's case); see also Moore v. State, 934 S.W.2d 289, 291-92 (Mo. 1996) (en banc) (describing further developments in abandonment doctrine). Sweet does not claim the benefit of the abandonment doctrine, and we know of no reason why Sweet's default should be excused merely because it might not be considered a default if it occurred today. See Mack v. Caspari, 92 F.3d 637, 640 (8th Cir. 1996) (rejecting abandonment argument where petitioner's appeal was decided before doctrine was propounded), cert. denied, 117 S. Ct. 1117 (1997).

Days later, Sweet filed this habeas corpus action in federal district court. Counsel was appointed, and Sweet amended his petition several times. The State moved to dismiss, and the District Court ultimately denied relief and dismissed the action on November 22, 1995. Sweet then filed a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). The court denied Sweet's motion on May 9, 1996, and Sweet appealed to this Court.[4] We granted Sweet a certificate of appealability pursuant to § 102 of the then-newly-enacted Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (codified at 28 U.S.C.A. § 2253 (West Supp. 1997)). Following a dispute about the scope of the certificate of appealability, the appeal proceeded.[5]

---

[4]We reject the State's argument that Sweet appealed only the denial of his Rule 59(e) motion and not the District Court's earlier denial of habeas relief. The State's contention is belied by the language of Sweet's notice of appeal ("Sweet appeals . . . from the final judgment denying petitioner habeas relief pursuant to 28 U.S.C. 2254 and denying petitioner's motion for relief pursuant to Rule 59(e) . . . .") and by common sense. We cannot imagine that a prisoner under a death sentence would abandon his substantive claims and appeal only a procedural motion, and we certainly do not believe that Sweet has done so in this case.

[5]The State objected to our granting the certificate without specifying the issue or issues as to which Sweet had made a substantial showing of the denial of a constitutional right. See 28 U.S.C.A. § 2253(c)(2)-(3) (West Supp. 1997). We denied the State's objection. More recently, our Court has held that § 2253, as amended by the AEDPA, applies to appeals filed after the enactment of the AEDPA and that certificates of appealability must specify the potentially meritorious issues raised by the petitioner. See Tiedeman v. Benson, No. 96-3977, slip op. at 4, 7 (8th Cir. Aug. 6, 1997). The Court in Tiedeman considered a certificate of appealability granted by a district court, recognized that it failed to specify the appropriate issues for appeal, treated the appeal as an application for a certificate of appealability instead, and denied the application. See id. at 7-8. Because the certificate in the instant case was granted by our own Court and the parties have fully briefed and argued the merits of the appeal, we will proceed to consider the merits.

-4-

In this appeal, Sweet raises nineteen claims, which we summarize under twelve headings as follows:  (1) ineffective assistance of trial counsel during the guilt phase of the trial in (a) failing to investigate certain witnesses and evidence, (b) failing to request a curative instruction or a mistrial during the prosecution's closing argument, (c) failing to investigate and present evidence in support of his motion to suppress evidence, and (d) allegedly being addicted to cocaine during the trial; (2) ineffective assistance of trial counsel during the penalty phase of the trial in (a) failing to object appropriately to the prosecutor's cross-examination of one of Sweet's witnesses, (b) failing to investigate and present certain mitigating evidence, and (c) failing to make an offer of proof to preserve for appeal certain mitigating testimony; (3) misconduct of the prosecutor in (a) introducing a prior bad act during the guilt phase, (b) failing to provide proper notice of the witnesses and evidence to be introduced during the penalty phase, and (c) using Sweet's arrest record to cross-examine one of Sweet's witnesses during the penalty phase; (4) improper exclusion of a juror; (5) improper exclusion of exculpatory evidence during Sweet's cross-examination of one of the prosecution's witnesses; (6) unlawful search and seizure of Sweet's property; (7) improper jury instruction defining reasonable doubt; (8) exclusion of certain mitigating evidence during the penalty phase; (9) improper admission of evidence of a prior bad act during the guilt phase; (10) improper jury instruction on mitigating circumstances during the penalty phase; (11) failure of the Missouri Supreme Court to conduct a meaningful proportionality review; and (12) ineffective assistance of appellate and post-conviction counsel.

## II.

We begin by discussing those of Sweet's claims that are not properly before us for one reason or another.

## A.

As a rule, we do not consider claims that have not been presented to the District Court. See Hornbuckle v. Groose, 106 F.3d 253, 256 n.5 (8th Cir. 1997), petition for cert. filed, No. 97-5054 (June 6, 1997). We decline to consider two of Sweet's claims for this reason: his search-and-seizure claim (#6) and his claim that the trial court improperly admitted evidence of a prior bad act against him in the guilt phase (#9). A claim related to Sweet's ninth claim has been preserved for review; we consider this claim, which turns on prosecutorial misconduct, later in this opinion.

Sweet's sixth claim is also improper for another reason. A Fourth Amendment claim of an unconstitutional search or seizure is not cognizable in a habeas corpus action unless the state has not "provided an opportunity for full and fair litigation" of the claim. Stone v. Powell, 428 U.S. 465, 494 (1976). We are not empowered to examine whether the Missouri courts made errors of law in deciding the Fourth Amendment issues argued by Sweet. See Willett v. Lockhart, 37 F.3d 1265, 1270 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1052 (1995). A search-and-seizure claim is cognizable in a habeas action only if "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure because of an unconscionable breakdown in the system." Id. at 1273. Sweet has not even attempted to make such a showing, nor does the record support it.

## B.

Next we discuss those of Sweet's claims that are procedurally defaulted. Sweet defaulted two of his claims by failing to present them to the Missouri courts at any stage of his direct appeal or his post-conviction proceedings. See Nave v. Delo, 62 F.3d 1024, 1030 (8th Cir. 1995) (recognizing that failure to present issue to state courts is a default), cert. denied, 116 S. Ct. 1837 (1996). These claims are that trial counsel

was ineffective in failing to make an offer of proof of certain mitigating evidence during the penalty phase (#2c) and that the jury instruction on reasonable doubt violated <u>Cage v. Louisiana</u>, 498 U.S. 39 (1990) (per curiam) (#7). Another claim was defaulted when Sweet failed to raise it in his post-conviction appeal to the Missouri Supreme Court. <u>See</u> <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996) (holding that failure to raise claim in post-conviction appeal is considered abandonment of claim), <u>cert. denied</u>, 117 S. Ct. 2421 (1997). This barred claim is that Sweet's trial counsel was ineffective in his handling of the motion to suppress evidence (#1c).[6]

Still other claims are barred because they were first raised in state court in Sweet's untimely amended 29.15 motion, as the Missouri Supreme Court held. <u>See</u> <u>Sweet</u>, 796 S.W.2d at 615. This default encompasses all of Sweet's claims of ineffective assistance of trial counsel (#1 and #2).

One of these ineffective-assistance claims requires further discussion. Although it was not raised in a timely 29.15 motion, the Missouri Supreme Court considered one issue on the merits: whether trial counsel was ineffective in failing to investigate or call Freddie Hensley as a witness (part of Sweet's claim #1a). <u>See id.</u> at 616. When a state court decides an issue on the merits despite a possible procedural default, no independent and adequate state ground bars consideration of that claim by a habeas court. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 262-63 (1989); <u>County Court of Ulster County v. Allen</u>, 442 U.S. 140, 152-54 (1979). Accordingly, we will consider the Freddie Hensley issue below in our discussion of Sweet's preserved claims. We note that the same reasoning does not apply to Sweet's claim of ineffective assistance of counsel in failing to object adequately to the use of Sweet's arrest record in the cross-examination of one of Sweet's witnesses during the penalty phase (#2a). The Missouri

---

[6]Although we have held that Sweet's substantive Fourth Amendment claim is barred by the doctrine of <u>Stone v. Powell</u>, his claim of ineffective assistance of counsel with regard to the search-and-seizure issue is cognizable in a habeas action. <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 382-83 (1986).

Supreme Court considered a related issue--whether the use of the arrests was proper as a matter of state evidence law--but it did not consider these events in the guise of a claim of ineffective assistance of counsel, most likely because Sweet did not present the claim as such on appeal. See Sweet, 796 S.W.2d at 614. This claim is therefore barred.

Sweet argues that many of these claims are properly before us because he raised them in state court in both a motion to recall the mandate and a state petition for habeas corpus. We disagree. A motion to recall the mandate is a proper means of preserving an issue for habeas review only in very limited circumstances, as we explained in Nave, 62 F.3d at 1031-32. In particular, we noted that a motion to recall the mandate is not a proper method of raising claims of trial error or ineffective assistance of trial counsel. See id. at 1031. Because all of Sweet's defaulted claims fall within these categories, his motion to recall the mandate was not a proper method of raising them, and the motion could do nothing to vitiate his earlier defaults. Sweet's argument that his state habeas petition under Missouri Supreme Court Rule 91 preserved his claims is similarly flawed. As we have recognized, a state habeas proceeding may not be used to raise a claim that was known to the petitioner at the time he filed his Rule 29.15 motion. See Reese, 94 F.3d at 1181 (citing State ex rel. Simmons v. White, 866 S.W.2d 443, 446-47 (Mo. 1993) (en banc)). Sweet inveighs mightily against this conclusion, arguing that the restricted scope of review available under Rule 29.15, as compared to the earlier Rule 27.26, makes a state habeas petition a viable means of raising certain claims for the first time. This argument is incorrect for three reasons. First, we have already decided this point against Sweet in Reese, a case we decided several months before Sweet filed his opening brief. Second, Simmons, on which we relied in Reese, was decided in the Rule 29.15 era, although it relied on the companion rule applicable to post-conviction challenges to guilty pleas. Third, the Missouri Supreme Court denied Sweet's own habeas petition on procedural grounds. See State ex rel. Sweet v. Delo, No. 75071, slip op. at 1 (Mo. Sept. 22, 1992). It is not the office of a federal habeas court to determine that a state court made a mistake of state law. See Estelle v.

McGuire, 502 U.S. 62, 67-68 (1991).  If the highest court of Missouri concludes that Sweet's claims have not been raised properly in a state habeas proceeding, that is the end of the matter.

Much of Sweet's argument is aimed at the wrong target.  Sweet relies, for example, on Simpson v. Camper, 927 F.2d 392 (8th Cir. 1991), in which we held a habeas appeal in abeyance while the petitioner brought a motion to recall the mandate in state court.  The issue in Simpson, however, was not procedural default, but exhaustion of state remedies.  See id. at 393; see also 28 U.S.C. § 2254(b)-(c) (1994) (requiring exhaustion of remedies before federal court may grant habeas relief).[7]  The State does not argue that Sweet has failed to exhaust his available remedies in state court, but exhaustion alone is not sufficient to entitle Sweet to consideration of his claims in federal court.  If the petitioner has "failed to follow applicable state procedural rules in raising the claims," Sawyer v. Whitley, 505 U.S. 333, 338 (1992), he is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies.  See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991).

## C.

Finding these claims defaulted, we turn to Sweet's argument that he has established cause and prejudice for the defaults.

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

---

[7]We also note that the relevant claim in Simpson was a claim of ineffective assistance of appellate counsel, a type of claim that may be raised for the first time in a motion to recall the mandate.  See Nave, 62 F.3d at 1031.

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.  Because we conclude that Sweet has not established cause for any of his defaults, we need not consider the question of prejudice.

As cause for failing to raise his claims properly in state court, Sweet argues that he received ineffective assistance of post-conviction counsel.[8]  A defendant, however, has no constitutional right to effective assistance of post-conviction counsel.  See Coleman, 501 U.S. at 752.  Absent a constitutional right, Sweet cannot claim ineffective assistance of post-conviction counsel as cause for his procedural defaults. See id. at 752-54.  We have recognized that this principle applies to claims of ineffective assistance of Rule 29.15 counsel in Missouri.  See Reese, 94 F.3d at 1182; Oxford v. Delo, 59 F.3d 741, 748 (8th Cir. 1995), cert. denied, 116 S. Ct. 1361 (1996). Accordingly, Sweet's effort to show cause for his defaults fails as a matter of law.

Sweet also claims that a fundamental miscarriage of justice will result if we do not review his defaulted claims on the merits.  He does not claim that he is actually innocent of the murder for which he was convicted; he merely repeats the claimed

[8]At times, Sweet seems to ignore the issue of cause and argues that the prejudice he suffered from the ineffective assistance of his trial counsel is, by itself, enough to excuse his default.  Another way of reading Sweet's argument is that the ineffective assistance of his trial counsel is cause for his failure to raise his claims of ineffective assistance of trial counsel.  We cannot endorse Sweet's attempt to bootstrap himself into habeas relief, which would have the effect of reducing the "cause" requirement to a nullity.  In any event, the argument makes no sense, because it was not trial counsel's duty to raise the issue of his own ineffectiveness; that was the duty of Sweet and his post-conviction counsel.  See Oxford v. Delo, 59 F.3d 741, 747 (8th Cir. 1995) ("[W]e fail to see any causal connection between trial counsel's performance and Oxford's failure to verify his amended Rule 29.15 motion. . . .  Oxford cannot resurrect this procedurally defaulted claim [of ineffective assistance of trial counsel] by cloaking it in the garb of a cause argument."), cert. denied, 116 S. Ct. 1361 (1996).

-10-

constitutional errors in his trial and pleads for justice.[9]  Sweet's argument falls far short of the showing of actual innocence that is required to meet the miscarriage-of-justice exception.  See Schlup v. Delo, 513 U.S. 298, 316 (1995) ("Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.").  Nor can Sweet meet the more demanding test required to show "actual innocence" of the death penalty.  See Sawyer, 505 U.S. at 336 (holding that petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law").

We therefore conclude that Sweet has shown no reason why we may consider his defaulted claims, and we do not discuss them further.

**III.**

We now turn to two claims that the Missouri Supreme Court reviewed for plain error even though Sweet did not preserve them properly for appeal.  We have remarked recently that our decisions on plain error review and procedural bar are in apparent disagreement.  See Hornbuckle, 106 F.3d at 257.  Some of our cases hold that a plain error review by a state court does not cure a procedural default, while others hold that when a state court conducts a plain error review, we also review for plain error in a

---

[9]In a pro se filing in this Court, Sweet states that he is claiming actual innocence and requests time and funds to develop his claim.  We have held recently that a "bare, conclusory assertion" that a petitioner is actually innocent is insufficient to excuse a procedural default, and we also have rejected the argument that a prisoner is entitled to a hearing to assist him in developing evidence of actual innocence.  Weeks v. Bowersox, No. 95-4123, slip op. at 24-29 (8th Cir. July 24, 1997) (en banc).  Sweet has had many years to develop evidence of actual innocence, and he has submitted none.

habeas action.  See id. (citing, respectively, Toney v. Gammon, 79 F.3d 693, 699 (8th Cir. 1996), and Mack v. Caspari, 92 F.3d 637, 641 & n.6 (8th Cir. 1996)).  We are powerless to resolve this disagreement, but we may choose which line of cases to follow.  See id.  For different reasons, we elect to review one of Sweet's claims for plain error and conclude that the other claim is defaulted.

Sweet's tenth claim is that the jury instruction on mitigating circumstances violated Mills v. Maryland, 486 U.S. 367 (1988), by requiring the jurors to agree unanimously that a mitigating circumstance existed before they could sentence him to life imprisonment.  See id. at 384.  Although Sweet failed to object to the instruction at trial, perhaps because Mills had not yet been decided, he raised the claim of error in his direct appeal, and the Missouri Supreme Court reviewed it for plain error, rejecting the argument as foreclosed by Missouri precedent.  See Sweet, 796 S.W.2d at 614.  Because Sweet presented this claim clearly to the state court in constitutional terms, we will exercise our discretion and review it for plain error.  See Hornbuckle, 106 F.3d at 257.  We conclude that no plain error is present.  In McDonald v. Bowersox, 101 F.3d 588 (8th Cir. 1996), cert. denied, 117 S. Ct. 2527 (1997), we considered a jury instruction identical in all material respects to the instruction in Sweet's case, and we concluded that it did not violate Mills.  See id. at 599-600.  We reach the same conclusion in the instant case.[10]

In his direct appeal to the Missouri Supreme Court, Sweet complained that the prosecutor failed to comply with a Missouri statute governing disclosure of witnesses to be called at the penalty phase of the trial.  See Mo. Rev. Stat. § 565.005 (1986).  The court reviewed that claim for plain error and found it wanting.  See Sweet, 796 S.W.2d at 613 n.4.  Sweet now raises the issue on habeas (claim #3b), but in the form of a

_____

[10]Sweet's related contention that the instruction informed the jurors that they "may" consider any mitigating factors rather than telling them that they "must" consider such factors was not presented to the District Court.  In any event, we have rejected the same argument in other cases.  See Reese, 94 F.3d at 1186.

-12-

claim of prosecutorial misconduct.[11]  We conclude that Sweet did not "'fairly present'" his claim of misconduct to the state courts, even as a form of plain error.  Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir.) (en banc) (citation omitted), cert. denied, 116 S. Ct. 1838 (1996).  In order to fairly present his constitutional claim to the state courts, Sweet was required to refer to the Constitution, a specific constitutional right, or a state or federal case raising a constitutional issue.  See id. at 411-12.  Raising a state-law claim in state court that is merely similar to the constitutional claim later pressed in a habeas action is insufficient to preserve the latter for federal review.  See id.; cf. Gray v. Netherland, 116 S. Ct. 2074, 2081 (1996) (holding that general appeal to broad concept such as due process is insufficient presentation of issue to state court).[12] Although it is not clear from the Missouri Supreme Court's opinion, an examination of Sweet's appellate briefs discloses that his argument in that court was couched exclusively in state-law terms and that federal issues were never addressed.  In fact, one of the cases cited by Sweet in his state-court brief disclaims the idea that discovery has constitutional implications.  See State v. Sykes, 628 S.W.2d 653, 656 (Mo. 1982). We therefore conclude that the Missouri Supreme Court's plain error review

---

[11]Sweet also alleges that the prosecutor improperly refused to disclose the evidence that the State planned to introduce at the penalty phase.  This argument was not presented on appeal to the Missouri Supreme Court at all, even as plain error, and we decline to consider it further.

[12]This reasoning applies equally to several of Sweet's defaulted claims.  For example, Sweet argues that he presented the "substance" of some of his claims of ineffective assistance of trial counsel in his timely 29.15 motion and therefore did not default them.  In reality, Sweet raised claims based on the same facts as his ineffective-assistance claims, but he raised them under different legal theories.  (He also raised some claims based on the same theories he now argues but different facts.)  This is an insufficient method of presenting claims to the state courts under Abdullah, and so we reaffirm our conclusion that these claims were defaulted.

encompassed only state-law issues and did nothing to cure Sweet's failure to assert his claim of prosecutorial misconduct in state court.[13]

## IV.

We now consider on the merits the claims Sweet has preserved for our review.

## A.

We begin with the claim that Sweet's trial counsel was ineffective in failing to call Freddie Hensley as a witness (#1a). As we have noted above, this claim was apparently defaulted, but the Missouri Supreme Court reviewed it on the merits, clearing the way for habeas review. To establish a claim of ineffective assistance of counsel, a petitioner "must establish that counsel's performance was deficient and that he was prejudiced by that deficient performance." Preston v. Delo, 100 F.3d 596, 603 (8th Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)), petition for cert. filed, No. 97-5133 (June 30, 1997). We review the District Court's factual findings for clear error and its conclusions of law de novo. See id. "[W]e presume state court findings of fact to be correct in habeas proceedings unless the petitioner establishes, the respondent admits, or the record shows otherwise or the petitioner produces evidence that convincingly establishes that the state court's findings were erroneous." McDonald, 101 F.3d at 592 (citing 28 U.S.C. § 2254(d)).[14]

---

[13]We note that even if Sweet had surpassed the procedural bar, his claim would founder on retroactivity grounds. The Supreme Court held recently that a similar claim of inadequate notice of penalty-phase evidence could succeed only if the Court established a new constitutional rule. See Gray, 116 S. Ct. at 2083-85 (citing Teague v. Lane, 489 U.S. 288 (1989)).

[14]The amendments to § 2254(d) enacted by the AEDPA do not apply in this case. See Lindh v. Murphy, 117 S. Ct. 2059, 2062 (1997).

The proceedings in state court indicate that Hensley contacted Sweet's counsel with information that she had seen a man who resembled Sweet driving a truck similar to Sweet's in the Springfield area shortly after the shooting. Counsel drove by the address Hensley gave him, noticed that the truck's door was a different color from the doors of Sweet's truck, and decided not to put Hensley on the witness stand. See Sweet, 796 S.W.2d at 616. "We will not fault a reasonable strategy not to investigate further if it is based on sound assumptions." Kenley v. Armontrout, 937 F.2d 1298, 1308 (8th Cir.), cert. denied, 502 U.S. 964 (1991). The assumption here--that the mystery truck was not likely to be confused with Sweet's truck--was certainly a sound one, and we cannot conclude on this record that counsel's representation "fell below an objective standard of reasonableness." Washington, 466 U.S. at 688. Nor can Sweet establish prejudice. The post-conviction court found that Hensley's testimony did not match the specificity of Sweet's claim and suggested that she was not a credible witness, and the Missouri Supreme Court held that the evidence of the other truck would not have been admissible. See Sweet, 796 S.W.2d at 616. Sweet's claim of ineffective assistance of counsel fails.

## B.

Next we address Sweet's claim of prosecutorial misconduct based on the prosecutor's introduction of evidence of a prior bad act (#3a). During the guilt phase of the trial, the prosecutor elicited from witness Donald Bills evidence that at the time of the murder, Sweet was under an outstanding Texas warrant arising out of an incident involving cocaine and a gun. The purpose of this evidence, according to the prosecutor, was to show that Sweet's motive for killing Harper was to avoid being arrested and returned to Texas. The Missouri Supreme Court held that the evidence was admissible on the issue of motive. See Sweet, 796 S.W.2d at 614. As we have remarked already, Sweet did not renew before the District Court his argument that the trial court denied him due process of law by admitting this evidence, and that claim is

-15-

not now before us.[15] Sweet's theory of prosecutorial misconduct is that the prosecutor "knew it was improper to pursue purely irrelevant and inflammatory testimony" but introduced it nevertheless. Sweet Br. at 25.

The problem with Sweet's claim is that he cannot show that the prosecutor knew that this evidence was irrelevant and inflammatory. In fact, the Missouri Supreme Court concluded just the opposite: the evidence was relevant and admissible. See Sweet, 796 S.W.2d at 614. Aside from occasional references to broad principles of due process, Sweet's entire argument is directed at rearguing the admissibility issue. But this issue has been decided against him already, and we are powerless to determine that evidence is inadmissible as a matter of Missouri law. See McGuire, 502 U.S. at 67-68. Anticipating such a holding, Sweet insists that "this issue requires a federal court ruling on the prosecutor's misconduct, not on a state evidentiary issue. The evidentiary issue simply forms part of the basis for the prosecutorial misconduct claim." Sweet Br. at 25. As Sweet has formulated his misconduct claim, however, it cannot succeed unless we also decide that the evidence was inadmissible. This we cannot do, and so we agree with the District Court that relief is unavailable to Sweet.

## C.

Sweet next argues that the prosecutor was guilty of misconduct in cross-examining a witness during the penalty phase (claim #3c). Sweet presented Judy Meyer during the penalty phase to testify about Sweet's good character. On cross-

---

[15]In cases where the petitioner alleges that both the court's action in admitting the evidence and the prosecutor's action in presenting the evidence violate due process, we have conflated the two issues and applied the same test, looking to see whether the admission of the evidence was so egregiously improper as to deny the petitioner a fair trial. See Anderson v. Goeke, 44 F.3d 675, 678-79 & n.2 (8th Cir. 1995). In this case, where the trial court's action is no longer an issue, we take Sweet's claim of misconduct as he presents it to us.

examination, the prosecutor sought to test Meyer's knowledge of Sweet's reputation by asking her whether she was aware that Sweet had been arrested on a number of charges on different occasions. See generally Michelson v. United States, 335 U.S. 469, 482-83 (1948) (approving this type of cross-examination in federal courts). The prosecutor did not mention that some of the arrests had led to acquittals or to convictions on lesser charges, nor that Sweet had never been prosecuted following other of the arrests. Although the Missouri Supreme Court concluded that the prosecutor's questions were proper under Missouri law, see Sweet, 796 S.W.2d at 614, Sweet argues that his Eighth Amendment and due process rights were violated because the questions were misleading and rendered the penalty phase unreliable and fundamentally unfair.[16] As we have noted above, Sweet defaulted the related claim that his counsel was ineffective in failing to object to the questions and failing to explain adequately the outcomes of the arrests.

The District Court concluded that Sweet's claim was without merit. We might well agree if we were to reach the merits, but we conclude that Sweet is not entitled to relief under the doctrine of Teague v. Lane, 489 U.S. 288, 316 (1989) (plurality opinion). See also Penry v. Lynaugh, 492 U.S. 302, 313-14 (1989) (holding that Teague doctrine applies in capital cases). As it is relevant here, Teague stands for the proposition that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure unless those rules would be applied retroactively to all defendants on collateral review." Teague, 489 U.S. at 316. This means that "unless reasonable jurists hearing petitioner's claim at the time his conviction became final 'would have felt compelled by existing precedent' to rule in his favor, we are barred

---

[16]At times in his argument, Sweet also claims that the prosecutor's questions were false, inaccurate, or distorted. Sweet presents nothing to indicate that the facts subsumed in the prosecutor's questions--namely, that Sweet was arrested on particular charges on particular dates--are in any way inaccurate. Before the District Court, Sweet argued only that the questions were misleading because they failed to include the eventual outcomes of the arrests. We therefore limit our inquiry to this issue.

from doing so now."  Graham v. Collins, 506 U.S. 461, 467 (1993) (quoting Saffle v. Parks, 494 U.S. 484, 488 (1990)).  We must apply Teague before considering Sweet's claim on its merits.  See Caspari v. Bohlen, 510 U.S. 383, 389 (1994).

Our Teague inquiry has three steps.  See O'Dell v. Netherland, 117 S. Ct. 1969, 1973 (1997).  We first determine when Sweet's conviction became final.  The Supreme Court's denial of Sweet's petition for certiorari on March 18, 1991 fixes the point of finality.  (We note that there have not been any developments since that date that would affect our analysis anyway.)  Next we determine "whether a state court considering [Sweet's] claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule [Sweet] seeks was required by the Constitution."  Parks, 494 U.S. at 488.  No case cited by Sweet or discovered by us even approaches, much less compels, his proposed rule that a prosecutor may not cross-examine a character witness about the defendant's prior arrests without disclosing the results of those arrests.  See Johnson v. Mississippi, 486 U.S. 578, 590 (1988) (holding that use as aggravating factor of prior conviction that was later reversed violated Eighth Amendment); Gardner v. Florida, 430 U.S. 349, 362 (1977) (plurality opinion) (holding that death sentence based in part on presentence report that defendant "had no opportunity to deny or explain" violated due process); Woodson v. North Carolina, 428 U.S. 280, 305 (1976) (plurality opinion) (holding that mandatory death penalty for first-degree murder violated Eighth Amendment); Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974) (holding that ambiguous remark in prosecutor's closing argument did not violate due process); Miller v. Pate, 386 U.S. 1, 7 (1967) (holding that prosecutor's "knowing use of false evidence" violated due process); Newlon v. Armontrout, 885 F.2d 1328, 1335 (8th Cir. 1989) (holding that closing argument in which prosecutor "(1) expressed his personal belief in the propriety of the death sentence and implied that he had special knowledge outside the record; (2) emphasized his position of authority as prosecuting attorney of St. Louis County; (3) attempted to link petitioner with several well-known mass murderers; (4) appealed to the jurors' personal fears and emotions; and (5) asked the jurors to 'kill him now.  Kill

him now.'" violated due process), <u>cert. denied</u>, 497 U.S. 1038 (1990).  Although we have been unable to locate any cases discussing the precise issue argued by Sweet, we have suggested that cross-examination of the sort that took place in the instant case is permissible.  <u>See</u> <u>Byrd v. Armontrout</u>, 880 F.2d 1, 11 (8th Cir. 1989), <u>cert. denied</u>, 494 U.S. 1019 (1990); <u>cf.</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 439 n.6 (1983) (suggesting that due process does not require more than <u>Michelson</u> requires).

Only a new rule, therefore, would help Sweet.  The third step of our inquiry is whether this new rule "nonetheless falls within one of the two narrow exceptions to the <u>Teague</u> doctrine."  <u>O'Dell</u>, 117 S. Ct. at 1973.  Little discussion is required here.  Sweet does not proffer a rule "forbidding criminal punishment of certain primary conduct [or] prohibiting a certain category of punishment for a class of defendants because of their status or offense."  <u>Penry</u>, 492 U.S. at 330.  Nor is his proposed rule within the even narrower exception for rules requiring procedures that "'are implicit in the concept of ordered liberty.'"  <u>O'Dell</u>, 117 S. Ct. at 1973 (quoting <u>Graham</u>, 506 U.S. at 478).  Because the proposed new rule does not fit either <u>Teague</u> exception, it may not be established in federal habeas review of a state conviction, and thus relief on this claim is not available to Sweet.

**D.**

Sweet's fourth claim is that venireperson Charlene Gill was struck improperly for cause.  Because Gill had expressed doubts about the death penalty but had indicated that her feelings about the death penalty would not prevent or substantially impair her from performing the duties of a juror, Sweet claims, her exclusion violated his Sixth Amendment rights under <u>Witherspoon v. Illinois</u>, 391 U.S. 510 (1968), and its progeny.  As <u>Witherspoon</u> has been interpreted, the proper test for exclusion of a juror for cause is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  <u>Wainwright v. Witt</u>, 469 U.S. 412, 424 (1985) (quoting <u>Adams v. Texas</u>, 448 U.S. 38, 45 (1980)).

-19-

The transcript of voir dire reveals that Gill was unsure how she felt about capital punishment, but she eventually stated that she could vote for the death penalty. Later, the court inquired about events in Gill's personal life, and Gill indicated that her son was about to have a birthday and that her husband, who was in night school, would be unable to be with her son. She said that she would be worried about her son, but she later stated that she would be able to decide the case fairly and impartially nevertheless. The prosecutor moved to strike Gill for cause, and the court denied that motion. The trial judge later moved Gill to the back of the panel on his own motion, however, citing his regular policy of handling venirepersons with problems in their personal lives in cases in which there are sufficient venirepersons without such problems to fill a jury panel.

The Missouri Supreme Court rejected Sweet's constitutional argument because "Gill was not actually removed from the venire panel." Sweet, 796 S.W.2d at 612. We do not believe that the issue may be resolved so simply, because Gill was removed from the panel in effect. It appears from the record that the trial judge would not have moved Gill to the back of the panel unless there were enough other venirepersons to ensure that she would not be selected.

Nevertheless, the trial judge stated that he was moving Gill not because of her scruples about the death penalty, but because of issues in her personal life. Sweet has given us no reason to disregard the court's stated reason for its action and to conclude instead that the court was motivated by Gill's position on capital punishment. Neither the invocation of the Sixth Amendment by Sweet's counsel nor the court's inquiry of the prosecutor whether, in light of the constitutional objection, he still wanted Gill excluded suffices to alter the nature of the court's action; in fact, immediately after this exchange, the judge reaffirmed that he was adhering to his policy. We are unable to conclude that the trial court's action had anything to do with issues of capital punishment; instead, we believe that the court's policy was a neutral, humanitarian method of enabling venirepersons to escape jury duty when events in their personal lives directed their

attention elsewhere. Whether the trial court's policy comported with state law on strikes for cause is not an issue for our consideration. See McGuire, 502 U.S. at 67-68.

To the extent that Sweet is suggesting that some sort of pretext analysis should apply to facially constitutional juror strikes or that Witherspoon's limitation on strikes "for cause" applies to strikes for any sort of cause, rather than merely to strikes based on the venireperson's feelings about capital punishment, any such argument is foreclosed by the Teague principles we have discussed above.[17] We conclude only that the trial court's movement of Gill to the back of the venire panel for personal reasons did not violate Sweet's Sixth Amendment rights.

**E.**

---

[17]Sweet argues that Parker v. Dugger, 498 U.S. 308 (1991), requires us to "look at the underlying reasons" for the trial court's action. Sweet Br. at 34. We do not think that this is what Parker means at all. In that case, a Florida trial judge sentenced Parker to death, and the state appellate court found that two of the aggravating factors relied on by the judge were invalid but affirmed the sentence anyway. The Supreme Court held that the appellate court was required to review the record to determine if any mitigating factors were present, since the trial court had not made a finding to the contrary. See Parker, 498 U.S. at 321-22. We are already looking at the record, of course, and Sweet does not suggest any deeper level of review to which we could descend. More importantly, however, we are not a state appellate court considering this case on direct review, and Sweet neglects to acknowledge the deference we owe to the state courts. For example, if the trial court had excluded Gill for Witherspoon reasons, the court's action would be entitled to the presumption of correctness of 28 U.S.C. § 2254(d). See Witt, 469 U.S. at 426-29. Similarly, if the motivation for the trial judge's action had been ambiguous and the Missouri Supreme Court had resolved the ambiguity, we would defer to that resolution under § 2254(d). See Wainwright v. Goode, 464 U.S. 78, 84-86 (1983) (per curiam). In light of the deference we owe to the state courts, we do not see how we may determine that the reason for the trial court's action was something other than what the court said it was.

-21-

Sweet next complains that he was not permitted to introduce exculpatory evidence during his cross-examination of Donald Bills during the guilt phase (claim #5). Bills testified on direct examination that on the day of the murder, Sweet began to repaint his truck, changed its tires, listened to a police scanner continuously, and shaved off his moustache. On cross-examination, Sweet sought to ask Bills whether Sweet had ever denied involvement in the crime. The court sustained the prosecutor's hearsay objection over Sweet's argument that the statement was admissible on the issue of state of mind. The Missouri Supreme Court affirmed. See Sweet, 796 S.W.2d at 614.

We again reject Sweet's attempt to reargue an issue of state law, namely admissibility. See McGuire, 502 U.S. at 67-68. But Sweet also argues that the exclusion of this evidence violated his due process rights, regardless of the propriety of the court's action under state law. The exclusion of evidence violates due process if "the asserted error was 'so conspicuously prejudicial or of such magnitude that it fatally infected the trial and deprived [the defendant] of fundamental fairness.'" Logan v. Lockhart, 994 F.2d 1324, 1330 (8th Cir. 1993) (citation omitted) (alteration in Logan), cert. denied, 510 U.S. 1057 (1994). "'Where the state interest [in excluding evidence] is strong, only the exclusion of critical, reliable and highly probative evidence will violate due process.'" Stallings v. Benson, 26 F.3d 817, 819 (8th Cir. 1994) (citation omitted) (emphasis in Stallings; our alteration). The state's interest in excluding hearsay testimony is undeniably strong. See Chambers v. Mississippi, 410 U.S. 284, 298 (1973) (noting that hearsay rule is "grounded in the notion that untrustworthy evidence should not be presented to the triers of fact"). We are unable to conclude that Sweet's proffered evidence is at all reliable; a denial of guilt made by a criminal defendant to a friend contains no indicia whatsoever of reliability. Cf. id. at 302 (holding that exclusion of evidence that another person confessed to three other individuals that he committed murder violated due process). Nor, we add, was this evidence critical to Sweet's defense. Sweet took the stand in his own defense and denied killing Harper. If the jury did not credit Sweet's denial of guilt at trial, there is

no reason to believe that a secondhand report that he had previously denied guilt would have carried any weight with the jury.

## F.

We now turn to Sweet's argument that the trial court's exclusion of evidence during the penalty phase violated his Eighth Amendment rights under Lockett v. Ohio, 438 U.S. 586 (1978), and its progeny (claim #8). During the penalty phase, one of Sweet's witnesses testified about various social activities she and her husband had enjoyed with Sweet, and she remarked that Sweet was a good photographer who liked to take pictures. After the witness stepped down, Sweet offered into evidence albums of photographs taken by him. The trial court refused the evidence as irrelevant.

Lockett stands for the proposition that "the State cannot bar relevant mitigating evidence from being presented and considered during the penalty phase of a capital trial." Parks, 494 U.S. at 490. This principle has been held to require that the sentencing judge or jury be permitted to consider various types of mitigating evidence. See Penry, 492 U.S. at 328 (mental retardation and background of abuse); Hitchcock v. Dugger, 481 U.S. 393, 398-99 (1987) (family background and potential for rehabilitation); Skipper v. South Carolina, 476 U.S. 1, 5 (1986) (evidence that defendant would not pose a danger if sentenced to life in prison); Eddings v. Oklahoma, 455 U.S. 104, 113-15 (1982) (youth and difficult family background).

We have little guidance on what constitutes relevance for Lockett purposes, but we know that "the mere declaration that evidence is 'legally irrelevant' to mitigation cannot bar the consideration of that evidence if the sentencer could reasonably find that it warrants a sentence less than death." McKoy v. North Carolina, 494 U.S. 433, 441 (1990). We agree with the Missouri Supreme Court that the jury could not reasonably have found that Sweet's photographs warranted or helped to warrant a sentence less than death. See Sweet, 796 S.W.2d at 614 ("[I]t is difficult to see how the photographs

-23-

are even tangentially relevant to defendant's character."); see also Schneider v. Delo, 85 F.3d 335, 342 (8th Cir.) (holding that evidence that accomplice had agreed to plea bargain was not relevant mitigating evidence), cert. denied, 117 S. Ct. 530 (1996).

Assuming arguendo that the Eighth Amendment required the trial judge to admit the photographs, their exclusion was harmless error. See Hitchcock, 481 U.S. at 399 (implying that harmless-error analysis applies to Lockett errors); Skipper, 476 U.S. at 7-8 (same). In light of the record as a whole, including the nature of the crime, Sweet's decision not to testify in his own behalf during the penalty phase, and the testimony of more than one witness that Sweet is a good photographer, we are satisfied that any error in excluding the photographs themselves was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967).[18]

## G.

Sweet's eleventh claim is that the Missouri Supreme Court did not conduct a meaningful and proper proportionality review of his death sentence. By "proper," Sweet apparently means to argue that the state court did not comply with the state statute requiring proportionality review of capital cases. See Mo. Rev. Stat. § 565.035 (1986). We have rejected many arguments by Missouri petitioners that they are entitled to habeas relief because of the Missouri courts' perceived failure to comply with § 565.035. See Bannister, 100 F.3d at 627; Six v. Delo, 94 F.3d 469, 478 (8th Cir. 1996) ("The Constitution does not require us to look behind [the court's proportionality] conclusion to consider the manner in which the court conducted its review or whether the court misinterpreted the Missouri statute."), cert. denied, 117

---

[18]We apply the Chapman standard rather than the more deferential standard of Brecht v. Abrahamson, 507 U.S. 619, 638 (1993), because the Missouri Supreme Court did not conduct harmless-error review on direct appeal. See Joubert v. Hopkins, 75 F.3d 1232, 1245 (8th Cir.), cert. denied, 116 S. Ct. 2574 (1996).

S. Ct. 2418 (1997).  See generally Walton v. Arizona, 497 U.S. 639, 656 (1990) ("[T]he Arizona Supreme Court plainly undertook its proportionality review in good faith and found that Walton's sentence was proportional to the sentences imposed in cases similar to his.  The Constitution does not require us to look behind that conclusion.").  We add that the habeas statute does not permit us to consider whether the court misinterpreted the state statute, as we have now repeated several times in this opinion.  See McGuire, 502 U.S. at 67-68.

The Eighth Amendment does not require a state appellate court to undertake a proportionality review.  See Pulley v. Harris, 465 U.S. 37, 50-51 (1984).  Sweet casts his argument instead in terms of due process and equal protection, but he does not articulate any coherent theory under either doctrine, except to rely on state law and Eighth Amendment cases decided before Pulley.  Even if we assume that Sweet's arguments would survive analysis under Teague, we see no merit in them.  We have rejected previous due process challenges to Missouri's proportionality procedures, see Foster v. Delo, 39 F.3d 873, 882 (8th Cir. 1994) (en banc), cert. denied, 514 U.S. 1075 (1995); Murray v. Delo, 34 F.3d 1367, 1377 (8th Cir. 1994), cert. denied, 515 U.S. 1136 (1995), and we see no basis for a conclusion that these procedures violated Sweet's right to equal protection of the laws.

## H.

Sweet's final claim (#12) is that he received ineffective assistance of appellate and post-conviction counsel. We have held already that Sweet has no constitutional right to effective assistance of post-conviction counsel. The totality of Sweet's argument regarding his appellate counsel is that "counsel for the consolidated appeal failed to present properly all issues on appeal." Sweet Br. at 47. Sweet has waived this claim by failing to argue it with any specificity whatsoever. See Sidebottom v. Delo, 46 F.3d 744, 750 (8th Cir.) (citing Fed. R. App. P. 28(a)(5)), cert. denied, 116 S. Ct. 144 (1995).

In any event, we have had occasion to review appellate counsel's work in our examination of the procedural-default issues, and we are satisfied that counsel's representation was able and thorough. Counsel raised eighteen points of error in more than 150 pages of briefing in the Missouri Supreme Court, and she pursued two of these points in a certiorari petition. Sweet was not entitled to have counsel raise "every argument, regardless of merit," Evitts v. Lucey, 469 U.S. 387, 394 (1985), and Sweet has not even attempted to demonstrate how anything counsel might have done differently would have affected the outcome of his case. Sweet's argument is without merit.

## V.

Finally, we address Sweet's argument that the District Court abused its discretion in denying him an evidentiary hearing. Sweet sought a hearing on his claims of ineffective assistance of trial counsel and his claim regarding the prosecutor's use of his arrest record to impeach his character witness. Because the bulk of Sweet's claims of ineffective assistance of trial counsel are procedurally barred, a hearing on those claims would get him nowhere. The same reasoning applies to the issue of Sweet's arrest record, which is barred by Teague. Only the issue of Freddie Hensley and the mystery

truck possibly could be affected by further development of the facts.  Sweet received a five-day hearing on his 29.15 motion and developed the factual basis of this claim at that time.  He is entitled to an evidentiary hearing in federal court only if he can show cause and prejudice for his failure to develop the facts fully in state court.  See Keeney v. Tamayo-Reyes, 504 U.S. 1, 11 (1992).  Sweet has not done so, nor has he shown that a fundamental miscarriage of justice will result if he is denied an evidentiary hearing.  See id. at 12.  Accordingly, the District Court did not abuse its discretion in denying Sweet a hearing.

## VI.

We have considered the additional arguments that may be drawn from Sweet's briefs, and we have concluded that they are without merit.  The judgment of the District Court is affirmed.  We thank appointed counsel for their diligent service.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-27-